**DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 16086-C.**

United States District Court S. D. California, Central Division.

May 10, 1955.

Roger Arnebergh, City Atty., Gilmore Tillman, Chief Asst. City Atty., Wallace J. Manley and Desmond J. Bourke, Deputy City Attys., Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Asst. U. S. Atty., Chief of Civil Division, Joseph D. Mullender, Jr., Asst. U. S. Atty., Los Angeles, Cal., for defendant.

JAMES M. CARTER, District Judge.

The question presented in the instant case is whether the plaintiff, a municipal corporation, can recover certain allocated indirect expenses purportedly incurred by it when it repaired its own electrical system following tort damage by an instrumentality of the defendant, United States of America.

The parties by stipulation agreed that:

(1) On March 2, 1953 a power pole owned by the plaintiff and located at or near Radford Avenue and Van Owen Street in the City of Los Angeles, State of California, was struck by a post office truck owned by the defendant United States of America;

(2) that the plaintiff's electric system was damaged and that the defendant United States was liable to the plaintiff for the damage sustained thereby;

(3) that the proper measure of damages was the reasonable cost of restoring the plaintiff's electric system to the condition it was in immediately prior to the accident;

(4) that the direct charges in the following amounts were true and correct: (a) Labor $130.16, (b) Material $41.74;

(5) that a 1-ton truck was used in executing the repairs for eight hours and that a 6-ton truck was used in executing the repairs for six hours;

(6) that the following indirect charges were at issue: (a) Superintendence [42% of direct labor] $54.63, (b) Tool expense [6% of direct labor] $7.80, (c) Transportation rate of .84¢ per hour for 1-ton truck, (d) Transportation rate of $2.82 per hour for 6-ton truck, and

(e) Administrative and General Expense [10% of all other items] $25.79;

(7) it was deemed for the purposes of the action that a member of the auditing firm of Price Waterhouse and Co. had been sworn as a witness and testified that duly qualified representatives of the firm, working under his supervision, had examined the accounts of the power system of the plaintiff in accordance with generally accepted auditing standards and that in his opinion the said accounts were kept in accordance with generally accepted accounting principles, and fairly showed the operation of the power system for the fiscal year ending June 30, 1953.

Under the applicable principles of federal law, the district court has jurisdiction of "claims against the United States, for money damages * * * for injury or loss of property * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S. C.A. § 1346(b). See also 28 U.S.C.A. § 2674.

■ In a California court, the plaintiff would be entitled to recover against an individual defendant indirect, allocated costs incurred in the performance of the repair work in question if the evidence showed that these costs were reasonable in amount and factually related to the actual repair work in question. So. Calif. Edison v. Elder, Appl. Dept. of Sup.Ct., Los Angeles County, Civil No. A8522; Southern Calif. Edison v. Griffin, Appl. Dept. of Sup.Ct., Los Angeles County, Civil No. A6667. The Federal Courts have recognized such a rule of law. See: United States v. Delaware Bay & River Pilots Ass'n, D.C., 10 F.Supp. 43.

The Assistant Controller and Chief Accountant for the plaintiff, qualifying as an expert, testified that from an accounting standpoint the plaintiff is divided into two systems, a water system and a power system, the funds and accounts of which are kept separate and distinct at all times; that the power system was organized into various divisions, the largest of which is the Operating Division; that the Operating Division was responsible for the maintenance and operation of the electrical distribution system and that it was the division which repaired and maintained poles, conduits or wires and particularly was the division concerned with the immediate repair in the instant case; that the damage to the system in this case occurred during the fiscal year 1952–1953.

The evidence presented by the plaintiff showed that the costs in question were reasonable and related to the damage and repair of its system. Specifically, on the issue of the first item, Superintendence, the evidence showed that the plaintiff directly charges its cost of superintendence and engineering where accountwise it is feasible to do so. On major jobs such an expense was and is directly charged. On small jobs performed throughout the fiscal year it was the custom and practice of the plaintiff to allocate the supervision and engineering costs of these jobs on the basis of the relationship between the supervision and engineering cost of small jobs and the direct labor cost of such small jobs. This proportion is reviewed monthly and adjusted when and if it is found to be necessary. This item includes the superintendence and engineering costs incurred by the Operating Division of the Power System of the plaintiff, since this division is the one which effected the repairs in the instant case. The practice of allocating this expense was done in accordance with accepted accounting practices and constituted good accounting practice in the utility field. In the opinion of this witness this expense was actually incurred by the plaintiff in effecting the repairs in the instant case, and the accounting procedure in question followed the accounting procedure recommended by the Federal Power Commission and the California Public Utilities Commission.

The evidence relating to the second issue, Tool Expense, showed that the same accounting philosophy used in the computation of the engineering and supervision was used in the accumulation of the tool expense. The expense related to small tools with a useful life of approximately one year was accumulated over the fiscal year and spread on a percentage basis in proportion to the direct labor charges on small jobs performed during the fiscal year. In the particular period in question the percentage was 6% and that this accounting method conformed with good accounting practices and was in conformance with the Uniform System of Accounts of the Federal Power Commission and the Public Utilities Commission of the State of California.

The evidence related to the Transportation Charges showed that these charges were in the nature of a direct charge. Since the plaintiff's accounting system was kept on a fiscal year basis, commencing July 1 and ending June 30, the actual cost of operating the units in question was not available until June 30, 1953. At that time the actual cost of operating the 1-ton truck was found to be $0.851 per hour as opposed to the estimated and billed cost of $0.84 per hour; and the cost of operating the 6-ton truck was determined to be $2.915 per hour as opposed to the billed cost of $2.82 per hour. Since the actual cost of operating these units exceeded the billed cost to the Government, it is apparent that the plaintiff expended more than the amount it seeks from the defendant. In addition, the evidence showed that these rates were less than the average rental charge for such units in the general area.

The last item at issue, 10% Administrative and General Expense, was described by the Chief Accountant as the overhead cost above the division level of performing the many various jobs of the plaintiff during the fiscal year. The restoration of the plaintiff's electric system in this case was one of the many jobs. 40% of this administrative cost was the plaintiff's contribution to its employees' Retirement Plan. All employees engaged in the actual repair in question came under this Retirement Plan. This administrative and general expense for the fiscal year was apportioned in the relation that it bore to the entire cost of operating the power system for that fiscal year. The actual percentage for the fiscal year 1952–1953 (the year in which the accident occurred) was 15.7%. Of this 15.7% 3.9% was related to new construction by the plaintiff and is therefore eliminated in the instant case. The figure of 10% was used so that such subdivision as attorneys' salaries, advertising expenses, etc., might be eliminated from the charge in a tort damage case. This percentage was tested monthly by the accounting division of the plaintiff and revised as necessary when and if a discrepancy was noted. In addition, this percentage was reviewed and tested by the firm of independent public accountants referred to in the stipulation. In the opinion of the expert accounting witness such an allocation conformed with good accounting practice and conformed with the practice of allocation of such expense followed by utilities, and conformed to the recommended Uniform System of Accounts of the Federal Power Commission and the Public Utilities Commission of the State of California.

The foregoing evidence amply demonstrated that the various indirect allocated expenses charged by the plaintiff in the repair of its power system in the instant case were fair, reasonable and related to the direct cost of repair. The fact that such charges are kept in conformity with the recommended system of accounts prescribed by the State and Federal regulatory commissions shows the clear intent of such commissions to charge such expenses to the responsible and proper classification rather than to allow such expenses to be incurred by the customers of the utility through payment of their electric bills. In the State court, in the case of Southern California Edison Co. v. Elder,

(supra) the Appellate Court pointed out that indirect and allocated expenses required to repair a portion of an electric system should be included as a part of the damage suffered by the utility when the evidence showed that such expenses were incurred by the plaintiff and required in the repair operations in question. The evidence in the instant case substantially showed that each and every item of allocated expenses in question was incurred by the plaintiff and was required to effect the repair and restoration of the electric system of the plaintiff.

Plaintiff is entitled to recover its supervision and engineering expenses, its tool expenses, its administrative and general expense, and its expense incurred in the operation of the 1 and 6-ton trucks used in the repair work, in the amounts and percentages as in the complaint alleged.