424 F.Supp. 453 (1977)
UNITED STATES of America, Plaintiff,
v.
COMMERCIAL AMERICAN BARGE LINE COMPANY, the M/V JACK D. WOFFORD, its engines, tackle, appurtenances, etc., and BARGE ACBL 2748, in rem, Defendants.
No. 76-395A(4).
United States District Court, E. D. Missouri, E. D.
January 4, 1977.
*454 Jean C. Hamilton, Asst. U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., Rosemary Denson, Trial Atty., U. S. Dept. of Justice, Admiralty & Shipping Section, Washington, D. C., for plaintiff.
Fritz Faerber, Lucas & Murphy, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff filed this suit pursuant to 28 U.S.C. § 1345 seeking damages allegedly sustained during a collision. In addition, plaintiff seeks statutory penalties imposed by 33 U.S.C. § 411.
This cause was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise *455 fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1. Plaintiff United States of America is, and was at all times relevant herein, the owner of Lock No. 27 and all appurtenances thereto. Said lock is located on the Mississippi River at Granite City, Illinois, and is a public work built and maintained by plaintiff for the preservation and improvement of navigable waters. Defendant American Commercial Barge Line Company ("Company") was the owner and operator of the M/V Jack D. Wofford and Barge ACBL 2748.
2. On June 3, 1973, the M/V Jack D. Wofford approached Lock No. 27 with eighteen barges in tow. The M/V Moss Bluff transported eight of the barges through the lock and the M/V Jack D. Wofford attempted to maneuver the remaining ten. The mate at the head of the tow signaled the master of the M/V Jack D. Wofford, by hand signals, to back up. Warnings were given by the head lock operator on the signal horn, and the right light was signaling. Nevertheless, the M/V Jack D. Wofford proceeded forward and collided, along with Barge ACBL 2748, with the closed lower land wall miter gate.
3. The lower land wall miter gate was an integral part of the Lock. The Lock itself had an exceedingly long life expectancy. The lower land wall miter gate was in an undamaged condition prior to the collision.
4. Prior to this time, on March 2, 1973, Fruin-Colnon Corporation had begun construction of an upper guide wall at Lock 27 for the Army Corps of Engineers. Fruin-Colnon had also been awarded the contract for construction of a lower guide wall and alteration of the upper gate sill at Lock 27. Fruin-Colnon was working at the Lock at the time of the collision.
5. On March 12, 1974, plaintiff by letter requested that Fruin-Colnon submit a bid for repairs to the lower land wall miter gate which had been damaged by defendant vessels. The repair work was submitted to Fruin-Colnon for bidding because Fruin-Colnon was already working at the Lock and it would have been impractical and inadvisable for two different companies to work in this same area. On May 23, 1974, Fruin-Colnon submitted a bid of approximately $54,692.00. This bid, however, was never accepted by plaintiff.
6. In April, 1975, plaintiff revised and changed the method of repairing the damage to the lower land wall miter gate and based on these changes, Fruin-Colnon submitted a bid in the amount of $86,118.00. This bid was accepted and payment has been made. The Court finds this bid to be reasonable. The repairs were completed in August, 1976. The repairs to the lower land wall miter gate did not increase the life expectancy of the lock.
7. Plaintiff sustained additional expenses, over and above the contract repair price, of approximately $6,000.00. These expenses include damage examination by the Army Corps of Engineers, and overhead costs. The total damage sustained by plaintiff was $92,968.77.
8. The difference between the $54,000.00 bid and the $86,000.00 bid was due in part to mistaken calculations in amount of profit, a change in pre-stressing methods, certain omissions of expenses, and additionally, higher costs in wages and materials because of the passage of time. These higher costs for wages and materials amounted to $15,400.00.
9. Defendant vessels violated 33 U.S.C. § 408 when they collided with the lower land wall miter gate.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and the parties in accordance with 28 U.S.C. §§ 1333 and 1345.
The Court has found that the M/V Jack D. Wofford and barge ACBL 2748 collided with the closed lower land wall miter gate of Lock No. 27. Under the circumstances, the collision amounted to *456 negligence and defendant Company is liable for the resulting damages. Cf., The Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943 (1895); Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724 (5th Cir.1967).
The Court further concludes that the requested prayer for damages, $92,968.77 must be reduced by $5,400.00, the increased costs of wages and materials, but that the prayer for damages is correct in all other respects. It is clear that plaintiff may recover indirect expenses. Department of Water and Power of City of Los Angeles v. United States, 131 F.Supp. 329 (S.D.Cal.1955), and the costs incurred by its own personnel, Freeport Sulphur Company v. The S/S Hermosa, 526 F.2d 300 (5th Cir. 1976). Depreciation would be inappropriate herein. The lower land wall miter gate was an integral part of the Lock and the Lock itself had an exceedingly long life expectancy. The repairs to the gate added nothing to the life expectancy of the Lock itself. Accordingly, a depreciation formula should not be applied. State of Oregon, State Highway Commission v. Tug Go-Getter, 468 F.2d 1270 (9th Cir. 1972), cited with approval in Freeport Sulphur Company, supra.
The Court has found that $5,400.00 in damages was sustained because of increased costs for wages and materials due to the passage of time. The evidence failed to establish a justification for the delay in accomplishing the repairs. It is the Court's conclusions that these increased costs should not be allowed. Cf., The Nyland, 164 F.Supp. 741 (D.C.Md.1958).
Defendants contend that plaintiff should be bound by the original bid submitted by Fruin-Colnon but never accepted by plaintiff. The Court disagrees. Cf., O'Brien v. Carney, 6 F.Supp. 761 (D.C.Mass. 1934); Arden Engineering Company, Inc., 41 Comp.Gen. 709 (B-148507 April 27, 1962); Seasonair of Virginia, Inc., 49 Comp. Gen. 585 (B-168697 March 16, 1970), holding that the government is under no obligation to accept bids and that no legal relationship arises from the submission of the bid. Accordingly, the Court will award plaintiff damages in the amount of $87,568.77. Interest will be awarded from the date expenditures were actually made. Mid-America Transportation Company, Inc. v. Rose Barge Line, Inc., 477 F.2d 914 (8th Cir. 1973).
Plaintiff also seeks recovery of the statutory penalty as provided in 33 U.S.C. § 411 for violation of 33 U.S.C. § 408 in conjunction with 33 U.S.C. § 412. Section 408 makes unlawful the destruction of any work built by the United States for the preservation and improvement of navigable waters. Section 412 imposes the statutory penalties of § 411 upon any boat or vessel violating § 409. This penalty must be imposed, "regardless of the negligence or intent of the owners or masters of the vessel." United States v. The M/V Martin, 198 F.Supp. 171, 176 (S.D.Ill.1961), aff'd, 313 F.2d 851 (7th Cir. 1963). See also, United States v. The Terry E. Buchanan, 138 F.Supp. 754 (S.D.N.Y.1956). Accordingly, the Court assesses a penalty of $500.00 against each of the offending vessels.
Judgment will be entered in plaintiff's favor against defendant Company in the amount of $87,568.77 with interest, and against each of defendant vessels in the amount of $500.00.