[Civ. No. 40359. First Dist., Div. Three. Feb. 7, 1977.]

PACIFIC GAS AND ELECTRIC COMPANY,
Plaintiff and Respondent, v.
GEORGE MOUNTEER et al., Defendants and Appellants.

**COUNSEL**

Sellar, Engleking, Hartman & Hazard, A. J. Engleking and Cyril Viadro for Defendants and Appellants.

Charles T. Van Deusen, Arthur L. Hillman, Jr., Ivor E. Samson, F. Ronald Laupheimer and Donald E. Erickson for Plaintiff and Respondent.

**OPINION**

**DRAPER, P. J.**—This appeal raises issues of the construction and validity of the statute (Pub. Util. Code, § 7952) fixing the measure of damages for injury to or destruction of poles supporting power transmission lines of certain public utilities.

Plaintiff-respondent alleged that defendants negligently caused their automobile to collide with a roadside utility pole which supported plaintiff's transmission line. Replacement of the pole was required. Defendants admitted liability but contested the damage claim, asserting the right to credit for depreciation of the pole. Respondent alleged damage of $2,070.87, and the trial court awarded that amount. Defendants appealed. The appellate department, Contra Costa County, affirmed and certified the case to us to secure uniformity of decision in an area of the law in which many cases, each for moderate amount, aggregate a substantial sum each year.

Section 7952, so far as here applicable, provides: "Any person who injures or destroys, through want of proper care, any necessary or useful . . . . facility or equipment of any telegraph, telephone, electrical, or gas corporation, is liable to the corporation for all damages sustained thereby. The measure of damages to the facility or equipment injured or destroyed shall be the cost to repair or replace the property injured or destroyed including direct and allocated costs for labor, materials, supervision, supplies; tools, taxes, transportation, administrative and general expense and other indirect or overhead expenses, less credit, if any, for salvage, as determined by such telegraph, telephone, electrical or gas corporations in conformity with a system of accounts established by the commission. The specifying of the measure of damages for the facility or equipment shall not preclude the recovery of such other damages occasioned thereby as may be authorized by law."

■ Appellants contend that depreciation must be deducted from the value of the pole in computing damages to be awarded for its destruction.

They first argue that section 7952 does not exclude such deduction. But the first sentence of the section provides for recovery of the cost "to repair or replace" including both direct and indirect expenses, "less credit, if any, for salvage." The specification of "cost to repair or replace" implies an intent to eliminate the issue of market value. The only expressed provision for deduction from the damage award is that for "salvage, if any." This express exception invokes the doctrine of *expressio unius est exclusio alterius,* thus barring a second credit for depreciation (see *People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503, 506 [159 P.2d 641]). Moreover, it does not appear to us that depreciation could be an item of "cost to repair or replace" when such costs, under the statute, are to be "determined by such" utilities "system of accounts established by the [public utilities] commission."

Appellants next point to evidence that the average service life of the overall total of respondent's poles is 35 years, and that the pole in issue had been in place 20.5 years. They argue that they thus produced evidence of substantial depreciation of the pole, and are therefore entitled to a credit for depreciation against the cost of replacement. The general rule is that the measure of damages for tortious injury to personal property is the difference between the market value of the property immediately before and immediately after the injury, or the reasonable cost of repair if that cost be less than the diminution in value (e.g., *Smith* v. *Hill,* 237 Cal.App.2d 374, 388 [47 Cal.Rptr. 49]). This rule stems from the basic code section (Civ. Code, § 3333) fixing the measure of tort damage as "the amount which will compensate for all the detriment proximately caused thereby" (*Kincaid* v. *Dunn,* 26 Cal.App. 686, 687 [148 P. 235]). It is notable that section 3333, in effect since 1872, by its own terms is inapplicable "where otherwise provided." The statute here in issue (Pub. Util. Code, § 7952), although placed in a code not in existence in 1872, does eliminate the factor of depreciation from the damage formula.

More importantly, a single pole has little or no ascertainable commercial value or fixed service life as an individual entity. Its real value lies in its use, with many other such poles, in sustaining an entire integrated transmission system. Even if we look solely to physical deterioration of poles in place, it is obvious that there will be wide variation in service

life, depending upon ground and weather conditions. But there is uncontradicted evidence that physical deterioration is not the major reason for replacement of poles. Rather, replacement principally results from relocation of transmission lines to accommodate shifts in population or business, or from replacement of suspended lines by underground conduits. There is evidence that, for these reasons, some poles are removed within a year or two of placement, while some remain in place for fifty years or more. For these reasons, respondent does not depreciate any individual pole, but applies the 35-year life figure only to depreciation of the transmission system as a whole. These problems of depreciation of any one pole have been recognized by courts (*New Jersey Power & Light Co.* v. *Mabee,* 41 N.J. 439 [197 A.2d 194]; and see discussion in *Ohio Power Co.* v. *Johnston,* 18 Ohio Misc. 55 [47 Ohio Ops.2d 93, 247 N.E.2d 338]). It is reasonable to conclude that the Legislature, in adopting section 7952, recognized these problems and established the cost of repair, without depreciation allowance, as the measure of damages for negligent injury to or destruction of individual poles of a transmission line.[1] Modification or reversal of this ruling is for the Legislature, rather than the courts.

Appellants do not directly attack any item of indirect damage here allowed. ■ They do, however, suggest impropriety if a plaintiff is required only to show items in a "system of accounting established by the [Public Utilities] Commission." Of course, a plaintiff utility can recover any such item of indirect cost only if it was proximately caused by a defendant's wrongful act. When such a showing is made, existence of cost allocation under the commission's system of accounts establishes a prima facie case, but is subject to attack by cross-examination or otherwise as to its necessity and as to the accuracy of the data supporting it.

■ Finally, appellants assert that section 7952 is unconstitutional. That attack, however, is extremely limited. Appellants concede, as they must, that "the Legislature has the power to reasonably and constitutionally establish a measure of damages." They do point out, however, that the section is specifically limited to telegraph, telephone, electrical or gas corporations. They contend that exclusion of other types of public utilities violates the due process and equal protection clauses. But the rights of appellants are in no way affected by the failure of the section to

---

[1]Although section 7952 refers to "any necessary or useful facility or equipment," this case concerns only the pole and fixtures related thereto. Thus we do not here determine applicability of the section to other equipment items, such as a pickup truck.

benefit additional public utilities, and this issue of constitutionality will not be considered at their request (5 Witkin, Summary of Cal. Law (8th ed.), and cases there cited).

Judgment affirmed.

Scott, J., and Good, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 7, 1977. Tobriner, J., and Sullivan, J.,† did not participate therein.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.