[Civ. No. 17023. Third Dist. Mar. 8, 1979.]

PACIFIC GAS AND ELECTRIC COMPANY,
Plaintiff and Appellant, v.
WILLIAM MICHAEL ALEXANDER, Defendant and Respondent.

[Civ. No. 16890, Third Dist. Mar. 8, 1979.]

PACIFIC GAS AND ELECTRIC COMPANY,
Plaintiff and Respondent, v.
RALPH JOSEPH RAMIREZ et al., Defendants and Appellants.

254

## COUNSEL

Charles T. Van Deusen, Arthur L. Hillman, Jr., Ivor E. Samson, F. Ronald Laupheimer and Donald Erickson for Plaintiff and Appellant and Plaintiff and Respondent.

Reese & Halkides, Pettit, Evers & Martin, Pettit & Martin, Joseph W. Rogers, Jr., LeMoine Skinner III, Susan M. Popik and Abigail S. Kelly for Defendants and Appellants and for Defendant and Respondent.

## OPINION

**PARAS, J.**—Pacific Gas and Electric Company (P. G. & E.) brought suit in Sutter County against defendant Michael Alexander, and in Tehama County against defendants Ralph Joseph Ramirez and Alfred Ramirez. In each suit P. G. & E. alleged that the defendants had been negligent in the operation of their automobiles, causing the destruction of wooden power poles belonging to P. G. & E. In each case defendants admitted liability, and the issue of damages was tried before the court sitting without a jury. Both trial courts issued findings of fact and conclusions of law. Judgments were entered in favor of P. G. & E. for $333.05 against defendant Alexander and $1,446.98 against defendants Ramirez. There were appeals in both cases, and we consolidated the appeals.

The sums represented by the individual judgments we consider here are relatively small; however, the issues presented ultimately involve very substantial sums by virtue of the astonishing number of poles which find themselves in the path of errant vehicles.[1]

The appeals raise the issue of the proper construction of Public Utilities Code section 7952. The statute provides: "Any person who injures or destroys, through want of proper care, any necessary or useful facility or equipment of any telegraph, telephone, electrical, or gas corporation, is liable to the corporation for all damages sustained thereby. The measure of damages to the facility or equipment injured or destroyed shall be *the cost to repair or replace the property injured or destroyed* including direct and allocated costs for labor, materials, supervision, supplies, tools, taxes, transportation, administrative and general expense and other indirect or overhead expenses, less credit, if any, for salvage, as determined by such telegraph, telephone, electrical or gas corporations *in conformity with a system of accounts established by the commission.* The specifying of the measure of damages for the facility or equipment shall not preclude the recovery of such other damages occasioned thereby as may be authorized by law." (Italics added.)

I

■ Asserting that depreciation should be involved in the measure of damages, defendants have gone to incredible lengths (e.g., a 70-page opening brief) in an attempt to complicate the meaning of section 7952.

---

[1] At trial P. G. & E. estimated that in 1974-1975 there were 4,457 such poles, and that its cost therefor was $4.5 million.

We find it quite clear. The "cost to . . . replace the property . . . destroyed" is very simply the *replacement* cost, i.e., that which must be expended to replace, without regard to depreciation.[2] Further discussion is unnecessary.

## II

Nor is the equal protection claim worthy of more than passing comment. There is no suspect classification here, no intrusion upon any fundamental right, no other factor which should bring into operation considerations of compelling state interest. ■ The replacement measure of damages is rationally related to the simple legislative purpose of assuring that damaged or destroyed public property is promptly repaired or replaced on a simple, practical, noncontroversial basis.

## III

■ Defendants argue that the trial court erred in the award of indirect costs, because these were not shown to be related to actual costs. P. G. & E.'s evidence allocated these costs in accordance with the uniform system of accounts established by the Public Utilities Commission. This was in accordance with the express terms of section 7952, hence appropriate.[3] There was no error.

The judgments are affirmed.

Puglia, P. J., concurred.

**REYNOSO, J.**—I dissent. In my view, depreciation is to be considered in determining damages for replacing wooden power poles. My conclusion merits further discussion.

P. G. & E. argues that Public Utilities Code section 7952 precludes a depreciation credit for the reasons expressed in *Pacific Gas & Electric Co.*

---

[2]Obviously that does not mean that in every case of a broken pole a completely new pole is required, for the duty to mitigate damages still exists. (See 23 Cal.Jur.3d, Damages, § 40 et seq., p. 62 et seq.) Thus if there exists a readily available market supply of used poles (something we of course do not know), both reasonable conduct and good sense dictate that it be used as the source for replacement of an "old" pole.

[3]At the very least, this created a rebuttable presumption of properly allocated costs, which was not rebutted (to the trial court's satisfaction) by defendants' evidence. (See *Department of Water and Power* v. *United States* (S.D.Cal. 1955) 131 F.Supp. 329.)

v. *Mounteer* (1977) 66 Cal.App.3d 809, 812-813 [136 Cal.Rptr. 280]. The *Mounteer* court listed the many problems in determining the depreciation of utility poles: variations in ground and weather conditions, natural disasters, relocation, and underground placement of transmission lines. The court concluded that the Legislature knew of these problems and thereby eliminated them by disallowing a depreciation credit. (*Id.,* at p. 813.) The reasoning is unpersuasive.

The extrinsic evidence of legislative intent (see Leg. History of Stats 1969, ch. 709, § 1, amending Pub. Util. Code, § 7952; Sen. Bill No. 939, introduced Apr. 8, 1969, amended in Senate May 13, 1969, amended in Assembly July 18, 1969; Enrolled Bill Memorandum to Governor (Sen. Bill No. 939) August 7, 1969; Leg. Counsel's Report on Enrolled Bill, July 30, 1969. See also Cal. Legis. Reg. Sess. 1975-1976, Assem. Bill No. 3398 (Nov. 9, 1976); Sen. Com. on Judiciary Digest, 1975-1976, Reg. Sess., Assem. Bill No. 3398 (Dixon)), indicates only that the purpose of enacting the amendment to section 7952 is to insure the right of P. G. & E., and others similarly situated, to recover certain *indirect,* or *allocated* expenses, as well as their direct costs. I find no mention, either way, of a credit for depreciation. That the Legislature expressly stated the measure of damages is to be the cost of repair or replace, rather than the market value difference, implies an intent to eliminate the problems of market evaluation. It cannot, however, imply an intent to eliminate the long established principle allowing a depreciation credit. (*Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497].)

Given the above-stated intent of the Legislature to insure recovery of *allocated expenses,* it seems clear the Legislature did not intend to *abrogate* the principles of compensatory damages, but merely to state its decision to include allocated expenses within the definition of proximately caused compensatory damages. Since a very basic principle of damages is the idea such damages are *compensatory* in nature unless otherwise *expressly* provided (Civ. Code, § 3333), allowing a depreciation credit, to avoid windfall, is more in keeping with long established principles.

The wording used in the measure of damages portion of section 7952 includes reference to a credit for salvage. This express enumeration of a credit does not invoke the doctrine of *expressio unius est exclusio alterius.* The courts, absent express statutory provisions, will not find an implied abrogation of long established principles. (*Williams* v. *Los Angeles Metropolitan Transit Authority, supra,* 68 Cal.2d at p. 603.)

A credit for depreciation of the injured property is allowed, and required, under the measure of damages contained in section 7952. The depreciation should be based on the *normal* useful life of such property, *without* consideration of such factors as natural disaster destruction, relocation, undergrounding, tortious destruction, or other artificial limitations on the useful life. Since there is insufficient evidence in the record to make such a determination in this case, I would reverse and remand to the trial courts for determination of the applicable credits.

A petition for a rehearing was denied April 3, 1979. Reynoso, J., was of the opinion that the petition should be granted.