676 F.2d 1216
 UNITED STATES of America, Appellant,
v.
LOGAN & CRAIG CHARTER SERVICE, INC., in personam and M/V
Margie Logan, its engines, tackle, appurtenances,
etc., in rem and Nine Unknown Barges, in
rem, Appellees.
 No. 81-1827.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 8, 1982.
Decided May 5, 1982.
 
 J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Robert Kingsland, U. S. Atty., St. Louis, Mo., Allen Van Emmerik, Rosemary A. Denson, U. S. Dept. of Justice, Washington, D.C., for appellant.
 Frank J. Dantone, Bruce E. Hampton, Henderson, Duke & Dantone, Greenville, Miss., for appellees.
 Before LAY, Chief Judge, and ROSS and McMILLIAN, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 This is a suit brought by the United States for damage to an extension of a lock on the Mississippi River. On October 14, 1976, the M/V Margie Logan, a diesel towboat owned and operated by Logan & Craig Charter Service, Inc., approached Lock and Dam No. 26 (located on the Mississippi River near Alton, Illinois) heading south with nine loaded barges in tow. A 600 foot long concrete guidewall extends upriver along the bank from the lock gates. Three DeLong Pier barges are appended to the guidewall, extending it 600 feet upriver.[1] The tug approached the DeLong Pier barges at a 45 degree angle. The port corner of the lead barge contacted the port corner of the middle DeLong Pier barge. At the time of the collision, the port corner of the middle DeLong Pier barge was not aligned with the corner of the adjacent upriver barge and thus protruded four to six inches into the channel.
 
 
 2
 The United States sued Logan & Craig in federal district court for the Eastern District of Missouri, Judge H. Kenneth Wangelin presiding. The United States sought damages and penalties under the Rivers and Harbors Appropriation Act. 33 U.S.C. §§ 408, 411, and 412.
 
 
 3
 The district court found that the M/V Margie Logan's approach was "consistent with the customary and excepted (sic) navigational procedures and was accomplished ... in a prudent and seamanlike manner." The court determined that the "notch" created by the misalignment of the middle barge was not visible until the M/V Margie Logan's lead barge was within a few feet of the DeLong Pier barge.
 
 
 4
 The court also found that the United States failed to present sufficient evidence to establish that the Chief Engineer had recommended and the Secretary of the Army had approved the use of the DeLong Pier barges as required by 33 U.S.C. § 403. The court concluded that the "condition" of the DeLong Pier barges constituted an "obstruction" to navigation under section 403. The district court reasoned, because of the creation of this obstruction, the United States was required to prove that the obstruction could not have caused the collision. The court concluded that the Government violated its duty to correct the hazard or warn navigators and that this negligence was the sole proximate cause of the collision. Judgment was entered for defendants. The United States appeals. We reverse and remand to the district court with directions to enter judgment for the United States and to find the proper amount of damages.
 
 
 5
 The district court held that the extension to the guidewall, constructed by the Corps of Engineers, constituted an obstruction to navigation under section 403. We must disagree.
 
 Section 403 provides:
 
 6
 The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is hereby prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of War (Secretary of the Army).
 
 
 7
 33 U.S.C. § 403.
 
 
 8
 Section 403 was enacted to give the federal government jurisdiction to prevent private parties from obstructing navigable waters. In holding that a private cause of action is not implied under section 403, the Supreme Court recently observed:
 
 
 9
 (T)he legislative history supports the view that the Act was designed to benefit the public at large by empowering the federal government to exercise its authority over interstate commerce with respect to obstructions on navigable rivers caused by bridges and similar structures. In part, the Act was passed in response to this Court's decision in Willamette Iron Bridge Co. v. Hatch, 125 U.S. 1, 8 S.Ct. 811, 31 L.Ed. 629 (1888). There the Court held that there was no federal common law "which prohibits obstructions and nuisances in navigable rivers." Id., at 8, 8 S.Ct., at 814. Although Willamette involved private parties, the clear implication of the Court's opinion was that in the absence of specific legislation no party, including the Federal Government, would be empowered to take any action under federal law with respect to such obstructions. The Act was intended to enable the Secretary of War to take such action.
 
 
 10
 California v. Sierra Club, 451 U.S. 287, 101 S.Ct. 1775, 1779-80, 68 L.Ed.2d 101 (1981).
 
 
 11
 The approval procedure set forth in section 403 was designed to allow private parties and state and local governments to request and receive permission to improve navigable waters. There is nothing in the Act which indicates that work done by the federal government falls within this provision. The Act's provision of criminal penalties for violation of section 403, 33 U.S.C. § 406, and empowerment of the Department of Justice to enforce section 403, 33 U.S.C. § 413, are also evidence that section 403 was not intended to be applied to federal projects.
 
 
 12
 Plaintiff argues that the DeLong Pier barges were protected under section 408. Section 408 reads:
 
 
 13
 It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works: Provided, That the Secretary of War (Secretary of the Army) may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in his judgment such occupation or use will not be injurious to the public interest.
 
 
 14
 33 U.S.C. § 408.
 
 
 15
 This section applies to cases involving damage to "work built by the United States ... for the preservation and improvement of any of its navigable waters." This section does not state that the federal works must be approved in the manner specified in section 403 in order to be protected under section 408.
 
 
 16
 The DeLong Pier barge was a protected work under section 408. The Secretary of the Army built Lock and Dam No. 26 under congressional direction. Rivers and Harbors Act of July 3, 1930, Pub.L.No.520, 46 Stat. 918 (1930) as amended by Pub.Res.No.10, 47 Stat. 55 (1932). The Corps of Engineers is empowered to maintain and repair locks. 33 U.S.C. § 5. The Corps modified the barges at considerable expense and secured them adjacent to the upper guidewall extension in order to facilitate use of the lock. Although the barges were not built for this purpose, as modified and placed, they were part of a work protected under section 408.
 
 
 17
 The work must be considered as a whole. The district court erred in considering the "notch" created by the misalignment of the barges separately and classifying it as an obstruction under section 403. A federal work designed to facilitate navigation cannot be an obstruction to navigation under section 403. Cf. Magno v. Corros, 630 F.2d 224, 227-28 (4th Cir. 1980), cert. denied, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 [1981] (14 U.S.C. § 86 not applicable to federal dike); Chute v. United States, 610 F.2d 7, 10-11 (1st Cir. 1979), cert. denied, 446 U.S. 936, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980) (33 U.S.C. § 409 not applicable to ship deliberately sunk by federal government).
 
 
 18
 It is well recognized that private parties are strictly liable for damage to works protected under section 408. In United States v. Federal Barge Lines, Inc., 573 F.2d 993, 997 (8th Cir. 1978), this court noted:
 
 
 19
 The purpose of the Act is to protect, preserve, and make safe the Nation's navigable waterways, and the United States is the principal beneficiary of the Act. Wyandotte Transportation Co. v. United States, 389 U.S. 191, 201, 88 S.Ct. 379 (385), 19 L.Ed.2d 407 (1967). The Act should be construed broadly to effectuate its goals. Wyandotte Transportation Co. v. United States, supra; United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). Congress imposed strict liability under sections 408 and 412 in order to provide funds for the replacement and maintenance of improvements made by the United States; to interpret those sections in such a way as to limit liability would be inconsistent with the intention of Congress.
 
 
 20
 See United States v. Ohio Valley Co., 510 F.2d 1184, 1186 (7th Cir. 1975); United States v. M/V Martin, 313 F.2d 851, 853 (7th Cir. 1963); United States v. Commercial American Barge Line Co., 424 F.Supp. 453, 456 (E.D.Mo.1977). But see United States v. Tug Colette Malloy, 507 F.2d 1019, 1022 (5th Cir. 1975) (dicta stating proof that United States solely at fault is defense). Section 408 states that it is unlawful to damage a work built by the United States for the improvement of its navigable waters and section 412 provides for liability for the damage caused by such violation. These provisions do not require a showing of negligence.
 
 
 21
 The sole issue is causation. The M/V Margie Logan was clearly an active cause of the damage at issue.
 
 
 22
 In this appeal, the government raises only the issue of damages under section 412. We thus need not address the appropriateness of assessing the various penalties under sections 411 and 412. We reverse the decision of the district court and remand this case back to the district court to find the amount of damages.
 
 
 23
 Judgment reversed.
 
 
 24
 ROSS, Circuit Judge, concurring specially.
 
 
 25
 I concur in the result only.
 
 
 
 [1]
 The guidewall serves to guide boats into the lock's chamber and is used to rest boats against while they await entry. In 1974, the Army Corps of Engineers extended the guidewall 600 feet by annexing four 150 foot long DeLong Pier barges. They were anchored in place by steel beams driven vertically through wells in the barges into the river bottom. On October 5, 1976, the two middle barges were removed and replaced by one 300 foot long barge