SENTELLE, Senior Circuit Judge,
dissenting:
In reversing the district court’s dismissal for lack of jurisdiction, the majority discerns error both in the district court’s determination that the dispute did not come within the New York Convention and that the Czech Republic had not otherwise waived its sovereign immunity under the Foreign Sovereign Immunities Act (“FSIA”), 28 U.S.C. § 1605(a)(1). See Maj. Op. at 134. In so concluding, the majority holds that Diag Human and the Czech Republic had a commercial legal relationship at the time this dispute arose, thereby bringing the arbitration award at issue within the scope of the FSIA and the New York Convention. See 28 U.S.C. § 1605(a)(6); 9 U.S.C. § 202. I see no error in the district court’s finding that any legal relationship between Diag Human and the Czech Republic ended before the present dispute. Nor do I conclude that the Czech Republic has otherwise waived its sovereign immunity. I would therefore affirm the district court.
We stated in Herbert v. Nat’l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992), that the procedural posture by which a district court considers subject-matter jurisdiction “has a profound effect on the manner in which this Court will review its disposition.” Where the district court relies only on “undisputed facts within or outside the pleadings,” our review is necessarily de novo. Id. “If, however, the trial court rests not only upon undisputed statements, but determines disputed factual issues, we will review its findings as we would any other district court’s factual determinations: accepting them unless they are ‘clearly erroneous.’ ” Id. These principles suffice to dispose of this case.
First, the district court did not clearly err when it found that any legal relationship between Diag Human and the Czech Republic ended before the dispute arose. Diag Human’s complaint nowhere references a commercial relationship between the Czech Republic and Diag Human. See J.A. 388-96. Instead, the complaint avers that the Czech Republic’s “actions had illicitly disrupted cooperation between Diag Human and a second company, Novo Nor-disk, ... causing it eventually to shut down.” J.A. 390 ¶ 9. The district court so concluded when it dismissed Diag Human’s complaint sua sponte. See Diag Human S.E. v. Czech Republic-Ministry of Health, 64 F.Supp.3d 22, 29 (D.D.C. 2014) (“Before entering into the Arbitration Agreement, plaintiff and defendant did not have any legal relationship, let alone a commercial one.”).
Only with its Rule 59(e) motion for reconsideration did Diag Human provide any evidence, or even an allegation, that it had an ongoing legal relationship with the Czech Republic. See J.A. 712-14. Specifically, Diag Human presented the Declaration of Joseph Stava, which supposedly establishes such a relationship “through a cooperation program and Framework Agreement between the Ministry and Diag *139 Human.” J.A. 813. The district court considered the statements in the Stava Declaration and, based on those allegations, agreed “that at one time there was a commercial relationship between Diag Human and the Ministry.” J.A. 814 (emphasis in original). However, the district court also found that “the parties’ commercial relationship changed over time” such that “the commercial relationship between the parties ended before the dispute at issue in this case arose in 1992.” Id.
Because the district court resolved disputed issues of fact when it dismissed Diag Human’s complaint for lack of subject-matter jurisdiction, we review those findings for clear error. Herbert, 974 F.2d at 197. I see none. The Stava Declaration contains myriad facts suggesting that Diag Human’s relationship with the Czech Republic ended prior to the dispute. For example, the declaration states that the Ministry of Health “decided to open a tender for bids for a relatively small portion of the work that already was covered by the Framework Agreement,” suggesting that it did not see itself as bound by that agreement. J.A. 740 ¶ 14. Furthermore, the Ministry of Health allegedly “aided” Diag Human’s competitors “to discredit Diag.” Id. at 741 ¶17. The Ministry did not award an initial tender to Diag Human and “took further steps to cut Diag out as a competitor in the market” while transferring control of Czech hospitals to state regional offices. Id. at 742 ¶¶18-19. The Ministry also “sent a directive ordering all hospitals to deal exclusively with ... parties” other than Diag Human. Id. at 743 ¶20. When the Ministry announced a new tender in 1991 for blood plasma services supposedly covered by the agreement with Diag Human, Diag’s bid was unsuccessful. Id. ¶ 22. If anything, the Stava Declaration suggests that the Czech Republic affirmatively disavowed any legal relationship it had with Diag Human. Diag’s alternative argument that its participation in the tender bids sufficed to create a legal relationship is specious. Cf. United States v. Comm. Am. Barge Line Co., 424 F.Supp. 453, 456 (E.D. Mo. 1977) (“[T]he government is under no obligation to accept bids and [] no legal relationship arises from the submission of the bid.” (citation omitted)).
The majority replaces the district court’s fact-finding with its own view that “by all accounts Diag Human did supply the necessary training, technology, and coordination required for modernizing the Czech Republic’s plasma system.” Maj. Op. at 135 (emphasis in original); see also id. (“Moreover, since the agreement was open-ended, we cannot conclude that it ended at any time prior to the 1992 letter that is the subject of this dispute.”). Even disregarding the problem of whether unilateral performance can establish a legal relationship, “[flactfinding is the basic responsibility of district courts, rather than appellate courts.... ” Pullman-Standard v. Swint, 456 U.S. 273, 291, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (citation and internal quotation marks omitted). Taking the facts as the district court found them, the New York Convention does not apply to Diag Human’s claims, meaning that the FSIA, 28 U.S.C. § 1605(a)(6), provides no basis for the district court’s jurisdiction. Accordingly, I would affirm.
Second, in my view, the district court did not err in holding that the Czech Republic did not otherwise waive its sovereign immunity. As the majority acknowledges, “The Foreign Sovereign Immunities Act ‘provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.’ ” Maj. Op. at 134 (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989)). Therefore, as the district court held, if the current dispute is not arbitrable under the *140 New York Convention, then the district court and derivatively this court have no jurisdiction unless the dispute comes within one of the other exceptions to foreign sovereign immunity recognized in the statute. The only other exception asserted before us is that created by 28 U.S.C. § 1605(a)(1), which applies to “any case ... in which the foreign state has waived its immunity either explicitly or by implication .... ”
I see no error in the district court’s conclusion that the Czech Republic had not explicitly or by necessary implication ■yraived its sovereign immunity. Diag Human only argues implied waiver under § 1605(a)(1). See Appellant’s Br. at 48. “We ... follow[ ] the ‘virtually unanimous’ precedents construing the implied waiver provision narrowly.” Creighton Ltd. v. Gov’t of State of Qatar, 181 F.3d 118, 122 (D.C. Cir. 1999) (citation omitted). Specifically, “we have held that implicit in § 1605(a)(1) is the requirement that the foreign state have intended to waive its sovereign immunity.” Id. That is to say, “[a]n implied waiver depends upon the foreign government’s having at some time indicated its amenability to suit.” Id. (citation omitted). Because the district court and I agree that the New York Convention provides no exception to sovereign immunity for this case, any implied waiver of the immunity must come from elsewhere. The only “elsewhere” suggested by Diag Human is the fact that in the early stages of this litigation, the Republic moved to dismiss under Rule 12(b)(6) and for forum non conveniens without raising sovereign immunity. I do not agree that this is sufficient foundation to constitute an implied waiver.
Courts have found waivers of implied sovereign immunity in three circumstances: “(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country governs a contract; or (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.” Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 444 (D.C. Cir. 1990).
While the list from Foremostr-McKesson is not necessarily exhaustive, it serves to illustrate what is not present in the instant case. For the reasons set forth above, the New York Convention does not apply to Diag Human’s arbitral award, meaning the arbitration circumstance is not present. Appellant makes no argument that the second circumstance governs. As to the third circumstance, a motion to dismiss is not a responsive pleading. Cf. Ashraf-Hassan v. Embassy of Fr., 40 F.Supp.3d 94, 101 (D.D.C. 2014) (“[A] motion to dismiss that omits mention of immunity will not provide sufficient proof of such a conscious decision.”).
For the reasons stated above, I believe that the New York Convention is inapplicable to this case, and Diag Human otherwise provides no compelling argument to rebut the presumed immunity of a sovereign. I therefore agree with the district court’s conclusion that “[n]one of the bases to find an implied waiver exist in this case.” Diag Human, 64 F.Supp.3d at 31.
I respectfully dissent.