291 So.2d 736 (1974)
MISSISSIPPI POWER & LIGHT COMPANY
v.
Clifton M. TILLMAN.
No. 47425.
Supreme Court of Mississippi.
March 18, 1974.
Green, Cheney, Jones & Hughes, Jackson, for appellant.
Wilkins, Ellington & Latham, Jackson, for appellee.
ROBERTSON, Justice:
The Mississippi Power & Light Company brought suit in the County Court of the First Judicial District of Hinds County, Mississippi, against Clifton M. Tillman to recover $244.71, the cost of replacing a utility pole broken by Tillman when his car hit the pole.
The utility pole was about four years old when broken and knocked down, and the *737 jury was instructed that they could consider depreciation in arriving at their verdict. The jury was likewise instructed that they could consider the reasonableness of the lost time costs and indirect overhead costs attributable to this particular job in arriving at their verdict. The jury returned a verdict for $210.62 damages and the Company appeals.
The facts are not in dispute. Tillman admitted that he negligently drove his automobile off the traveled portion of Fortification Street Extension and negligently and violently collided with the plaintiff's utility pole, breaking it so that it had to be replaced. The court instructed the jury to find for the Company as to liability.
The Company poses the two questions of law to be answered by this Court in this way:
"(1) When a negligent tortfeasor damages a utility pole and equipment to such an extent that they must be replaced, and the pole and equipment are component parts of a functioning utility system, is the proper measure of damages the reasonable cost of replacing the pole and equipment with a like pole and like equipment that will perform the same function, less the salvage value (if any) of the replaced pole and equipment; or is the tortfeasor entitled to a further credit for asserted depreciation in the value of the pole and equipment that were damaged?
"(2) When a negligent tortfeasor damages a functioning utility system, is the utility's right of recovery limited to the direct labor and material costs of the repairs; or is the utility also entitled to recover lost time and indirect overhead costs of repair that are proved with reasonable certainty and are correctly made in accordance with sound accounting principles?"
The Company assigns as error:
1. The court's refusal to grant Plaintiff's instruction No. 5, which was:
The Court instructs the Jury for the Plaintiff that you shall assess as your verdict the reasonable cost of replacing the Plaintiff's broken pole with like equipment capable of performing the same function, without considering the depreciated state of the broken pole, but deducting the salvage value of the replaced facilities, if any.
2. The Court's granting Defendant's instruction No. 6, which provided:
The Court instructs the jury for the defendant, Clifton M. Tillman, that in assessing damages against the defendant in arriving at your verdict you may take into consideration any reasonable depreciation of the replaced power pole, any salvage value of the pole, and other material replaced, and any other deductions or reasonable depreciation that the plaintiff may have claimed on the property in question.
The testimony was uncontradicted that there was no life expectancy for an individual utility pole. One might last a few years and another 50 years. So testified L.E. Toole, line foreman, Graham Temple, Division Superintendent; and W.R. Casper, Treasurer of the Company. Each utility pole in and of itself has no value. Each pole was an integral part of an electric distribution system, which system as a whole had a value.
Casper did testify that for bookkeeping and income tax purposes the Company handled depreciation in this way:
"Q Tell the jury whether or not you selected any life expectancy for bookkeeping purposes.
A On a composite basis, that is, taking into consideration all of our distribution property, we established it on the basis of 33 years.
Q Is that for any one pole  explain when you say a `composite basis', explain what you mean.

*738 A Well it means all distribution property, that is, your distribution substations, your distribution lines, your distribution poles, your services that go to the houses, the meters, transformers, all of them on a composite basis, and it comes out to 33 years.
Q How does the company depreciate electric poles for income tax purposes?
A Well, there again we have a composite rate that's established by the Internal Revenue Service, and that is based on 3.4 percent of our entire property, entire depreciable property.
Q In other words, not one particular pole?
A No, Sir."
Instead of being a utility pole that was damaged and broken, suppose it had been a four-year-old utility truck. Suppose it was necessary to replace a damaged fender with a new fender. Should the tortfeasor be allowed to submit to the jury the taking of depreciation on the four-year-old fender? We think not. The fender was an integral part of the truck, and the new fender added nothing to the overall value of the truck.
In New Jersey Power & Light Company v. Mabee, 41 N.J. 439, 197 A.2d 194 (1964), the Supreme Court of New Jersey reasoned:
"[T]he sundry rules for measuring damages are subordinate to the ultimate aim of making good the injury done or loss suffered and hence `The answer rests in good sense rather than in a mechanical application of a single formula.'
......
"It seems to us that the true issue is whether the replacement of the pole did more than make plaintiff whole and whether, if it did, it would be just to make the victim of the wrong contribute so much of the cost as would reflect that further benefit.
"If the life of every pole were 36 years and if it were clear that each pole would be replaced at the end of that period defendants could well urge that a new pole clearly conferred a benefit beyond the amount of the damage done. The difficulty is that there is no discernible life expectancy of an individual pole and that although the period of 36 years is used for accounting purposes, the pole that was destroyed might well have served for a much longer period and the new pole may last for but a few years. Moreover, because of changes in circumstances or in technology, it cannot be known whether the pole would ever have been replaced. In short, at least upon the record before us, we cannot say with reasonable assurance that the installation of a new pole did more than remedy the wrong done. An injured party should not be required to lay out money, as defendant's approach would require, upon a questionable assumption that one day its worth will be recaptured." 197 A.2d at 195-196. (Emphasis added).
This is the majority rule which is also followed by North Carolina, Connecticut, Louisiana, Oklahoma, Tennessee and West Virginia.
The trial court was in error in denying Plaintiff's instruction No. 5 and in granting Defendant's instruction No. 6. We hold that when a utility pole is an integral part of an electric distribution system, has no value of its own, but has a value only as an integral part of a complete distribution system, the question of depreciation should not be submitted to the jury to decide.
The Company next contends that the trial court erred in granting Defendant's instruction No. 7 which provided:
"The Court instructs the jury for the defendant, Clifton M. Tillman, that if you should find from a preponderance of the evidence in this case that a portion of the amount of damages claimed by *739 the plaintiff as wages and materials were actually an adjusted figure of approximately 10%-25 1/2% used to cover a portion of the indirect overhead & lost time cost, including general supervision cost, etc., then the Court instructs the jury for the defendant that the defendant may not be liable to the plaintiff for these adjusted costs, if any, as you may find from a preponderance of the evidence in this case."
It is the contention of the Company that this instruction is in direct and irreconcilable conflict with Plaintiff's instruction No. 2 which was:
"The Court instructs the Jury for the Plaintiff that you may assess as your verdict the reasonable cost of replacing the Plaintiff's broken pole with like equipment capable of performing the same function, but deducting the salvage value of the replaced facilities, if any.
"In determining the reasonable cost of replacing the broken pole, you may take into consideration not only the direct payroll costs but also such portion of the lost time costs and indirect overhead costs, if any, as may be reasonably attributed to the replacing of this pole; provided the same are proved with reasonable certainty and are correctly made in accordance with sound accounting principles. Lost time costs are defined as Holiday Pay, Rainy Day Pay, Personal Sickness Pay, Vacation Pay and miscellaneous lost time costs other than direct payroll costs (such as funerals and family sickness). Indirect overhead costs are defined as including general supervision costs arising from the wages of the engineering staff and supervisory personnel and other payroll related costs such as Retirement Plan Expenses, Public Liability and Workmen's Compensation Insurance, Employee Insurance Expense, and Social Security and Unemployment taxes, state and federal."
For the year 1970, the Company charged against each reimbursable job 15 1/2% of the direct labor costs of each particular job as a lost time adjustment and 10% of the direct labor costs and materials used on each reimbursable job as an indirect overhead costs adjustment. These percentages are reviewed and updated annually. The uncontradicted testimony was that these were reasonable expenses attributable to this particular job and were in accordance with sound accounting practices and the practice of the entire electric utility industry. In fact, the Mississippi State Highway Department and the Bureau of Public Roads of the United States accepted these percentage charges for lost time and indirect overhead costs as reasonable expenses of each job performed for them and authorized payment as billed.
The only logical and fair way that the defendant could rebut this testimony would be to offer testimony that such items as lost time adjustment and indirect costs adjustment were not in accord with sound accounting principles and were not in accord with the customs and practices of the electric utility industry in this geographical area.
These specific items have been approved as reasonable expenses by the courts of Connecticut, Oklahoma, Ohio, New York and Wisconsin. While there are no Mississippi cases directly in point, the reasoning and policy of the Mississippi decisions clearly support the application of such rule in the present case. Thus, in Vining v. Smith, 213 Miss. 850, 58 So.2d 34 (1952), Smith's automobile was damaged in a collision with an automobile driven by Mrs. Vining. The actual amount of the bill for the repair of Smith's car was $388.85. However, since Smith was financially unable to pay this repair bill, he had to borrow money from a finance company, and in doing so he incurred the additional expense of a carrying charge of $78.24. This Court held that this carrying charge was a legitimate expense incurred by Smith as a result of the accident and that he was entitled to recover this item in addition to the amount of the actual repair bill.
*740 Inasmuch as the testimony was uncontradicted that these were reasonable charges for lost time and indirect overhead costs, were in accord with sound accounting principles and the customs and practices of the electrical utility industry, the Company was entitled to a directed verdict. The trial court erred in granting defendant's instruction No. 7 and in submitting the question of the reasonableness of these expenses to the jury. The trial court should have instructed the jury to find for the plaintiff for $244.71.
The judgment of the circuit court affirming the judgment of the county court is reversed, and judgment is rendered here for the appellant for $244.71.
Reversed and rendered.
GILLESPIE, C.J., and SUGG, WALKER and BROOM, JJ., concur.