[No. 57754-4.  En Banc.  September 19, 1991.]

PUGET SOUND POWER AND LIGHT COMPANY, *Petitioner,* v.
GERALD W. STRONG, ET AL, *Respondents.*

*Charles C. Gordon, Nicholas P. Gellert, Laurie Johnson Kelly,* and *Perkins Coie,* for petitioner.

*Fred D. Gentry* and *Bean, Gentry & Rathbone,* for respondents.

*Douglas N. Jewett, City Attorney,* and *Walter L. Williams, Assistant,* on behalf of the City of Seattle and Washington Society of Municipal and Public Utility District Attorneys, amici curiae for petitioner.

DURHAM, J. — The issue presented here is the proper measure of damages for a negligently destroyed utility pole: the full replacement cost or the replacement cost less depreciation based on the life of the pole. The Court of Appeals affirmed the trial court's conclusion that an offset for depreciation is appropriate. *Puget Sound Power & Light Co. v. Strong,* 59 Wn. App. 430, 798 P.2d 1162 (1990). We reverse.

On January 6, 1984, Gerald Strong negligently drove his car into a Puget Sound Power and Light Company (Puget Power) utility pole and destroyed it. Puget Power replaced the pole and sought payment from Strong in the amount of $376.43 for the cost of a new pole and $1,475.05 in overhead expenses for installation. Strong admitted liability and did not contest the damages as related to overhead expenses. However, he refused to pay for the new pole, asserting that he was entitled to an offset of 45 percent, or $169.39, for the depreciated value of the destroyed pole. On cross motions for summary judgment, the only issue before the court was the proper amount of damages for the replacement pole.

Puget Power depreciates its facilities for tax and accounting purposes in compliance with regulations of

both the Federal Energy Regulatory Commission and the Washington State Utilities and Transportation Commission. Pursuant to these regulations, the original cost for the acquisition and installation of wood distribution poles is capitalized into Account 364. The equipment in this account is depreciated at an annual rate of 3.43 percent. The poles are valued only as a part of the entire system and as part of a general accounting classification. If poles are damaged as a result of third party negligence, Puget Power incurs repair expenses which are accumulated and charged to a pole damage claim. These costs are not capitalized into Account 364, but rather are maintained in a separate claim account, which is not depreciated. Damages recovered from a third party tortfeasor are credited against these costs. To the extent such costs are not recovered, they are debited against operating revenue.

The pole destroyed by Strong was installed in 1970 and was in good condition prior to the accident. While the average service life of a pole for depreciation purposes is 31 years, there is no way to predict how long a given pole will last in the field. Many factors can affect the life of a pole, including the condition of the original tree, the manner of storage and treatment, the installation of the pole, soil conditions, weather, insect infestation, lightning, and fire. Furthermore, poles are frequently removed because of other factors, including relocation, system transformation, vehicular accidents, upgrading of facilities, and customer requests. Puget Power's poles have no salvage value or retirement cost and there is no market for used utility poles.

The trial court granted Strong's motion for summary judgment, concluding that, as a matter of law, Strong was entitled to an offset for depreciation based on the life of the destroyed pole as computed by Puget Power's depreciation schedule for tax and accounting purposes. The Court of Appeals, Division Two, affirmed, expressly declining to

follow *Washington Water Power Co. v. Miller*, 52 Wn. App. 565, 762 P.2d 16 (1988). *Strong*, 59 Wn. App. at 435. In *Miller*, Division Three held that the utility was entitled to damages based on the full replacement cost, without an offset for depreciation.[1] This court accepted review to resolve the conflict between the divisions of the Court of Appeals.

■■ Generally, the measure of damages in tort actions is the amount that will adequately compensate for the loss suffered as the direct and proximate result of the wrongful act. *Burr v. Clark*, 30 Wn.2d 149, 190 P.2d 769 (1948). As recognized by the court below, if the damaged property has no market value, the measure of damages is the cost of replacement. *Strong*, 59 Wn. App. at 434 (citing *Clark*, at 158 and *Mieske v. Bartell Drug Co.*, 92 Wn.2d 40, 43, 593 P.2d 1308, 6 A.L.R.4th 923 (1979)). It is undisputed that there is no market for used utility poles. However, in denying Puget Power the full replacement cost of the pole, the court stated: "Puget would gain an estimated additional 14 years of service life if it were permitted to recover the cost of a new pole. Such compensation exceeds the loss incurred by Puget and, thus, would result in a windfall to Puget." *Strong*, at 434.

■ We would agree with that reasoning if the actual life expectancy of a specific pole could be determined. It cannot. As acknowledged by both *Miller* and the court below, the unpredictable forces affecting the life span of a pole render such a determination impossible. *Miller*, at 572; *Strong*, at 436. There is simply no discernible life

---

[1]The defendant in *Miller* struck a utility pole owned by the Washington Water Power Company (WWP). As in the present case, WWP uses an Account 364 for mass asset accounting to calculate costs and depreciate assets without maintaining individual records for each item of property. The service life of poles for depreciation purposes was 35 years. However, WWP presented evidence that, in actuality, poles have lasted as little as 6 hours and as long as 80 years. *Miller*, at 566.

expectancy for an individual pole. Because "we cannot say with reasonable assurance that the installation of a new pole did more than remedy the wrong done", Puget Power should not be required to pay the amount of the requested offset "upon a questionable assumption that one day its worth will be recaptured." *Miller*, at 571 (quoting *New Jersey Power & Light Co. v. Mabee*, 41 N.J. 439, 442, 197 A.2d 194 (1964)). A different result might be reached where a utility has a systematic program for replacing poles after a given number of years. *Miller*, at 572. That is not the case here. Moreover, Puget Power is not unjustly enriched since the pole was replaced solely because of Strong's negligence.

■ We also reject the court's reasoning that Puget Power would realize a benefit in excess of the loss incurred by the replacement of a used pole with a new pole because a utility pole has value independent of the system as a whole. *Strong*, at 434-35. It is hard to imagine how a utility pole would have a value independent of the system as a whole. There is no market for used poles. The utility system operates to distribute power. Poles are a necessary part of the distribution system. When service is interrupted by a downed power pole, the replacement pole serves to restore functioning to the system. Granting Puget Power the full replacement cost of the destroyed pole gives the utility no measurable benefit beyond that of restoring its distribution system. *Miller*, at 572.

Accordingly, we hold that Puget Power is entitled to recover the full replacement cost of a new pole. This holding is in accord with the majority of jurisdictions addressing this issue.[2] The trial court is reversed and the case is

---

[2]*Pacific Gas & Elec. Co. v. Alexander*, 90 Cal. App. 3d 253, 153 Cal. Rptr. 319 (1979); *Pacific Gas & Elec. Co. v. Mounteer*, 66 Cal. App. 3d 809, 136 Cal. Rptr. 280 (1977); *Horton v. Georgia Power Co.*, 149 Ga. App. 328, 254 S.E.2d 479 (1979); *Kansas Power & Light Co. v. Thatcher*, 14 Kan. App. 2d 613, 797 P.2d 162 (1990); *Gulf States Utils. Co. v. Guidry*, 183 So. 2d 122 (La. Ct. App. 1966); *Mississippi Power & Light Co. v. Tillman*, 291 So. 2d 736 (Miss. 1974); *Board of Pub. Utils. v. Fenton*, 669 S.W.2d 612 (Mo. Ct. App. 1984); *New Jersey Power &*

remanded for an award of damages without an offset for depreciation.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, GUY, and JOHNSON, JJ., concur.

*Light Co. v. Mabee,* 41 N.J. 439, 197 A.2d 194 (1964); *Carolina Power & Light . Co. v. Paul,* 261 N.C. 710, 136 S.E.2d 103 (1964); *Duke Power Co. v. Thornton,* ___ S.C. ___, 401 S.E.2d 195 (Ct. App. 1991); *Appalachian Power Co. v. Morrison,* 152 W. Va. 638, 165 S.E.2d 809 (1969); *Middle Tenn. Elec. Membership Corp. v. Barrett,* 56 Tenn. App. 660, 410 S.W.2d 914 (1966); *Hartford Elec. Light Co. v. Beard,* 3 Conn. Cir. Ct. 323, 213 A.2d 536 (1965). *But see Central Ill. Light Co. v. Stenzel,* 44 Ill. App. 2d 388, 195 N.E.2d 207 (1963); *Public Serv. Co. v. Jasso,* 96 N.M. 800, 635 P.2d 1003 (Ct. App. 1981); *New York State Elec. & Gas Corp. v. J.C.A. Truck Leasing, Inc.,* 19 N.Y.2d 926, 228 N.E.2d 393, 281 N.Y.S.2d 335 (1967); *Ohio Power Co. v. Zemelka,* 19 Ohio App. 2d 213, 251 N.E.2d 2 (1969).