951 P.2d 1124 (1998)
134 Wash.2d 558
Monica KIRK, a single woman, and Edith Sorensen, a widow, both as assignees of Nelson L. Christensen, Plaintiffs,
v.
MT. AIRY INSURANCE COMPANY, a foreign insurance corporation, Defendant.
No. 65563-4.
Supreme Court of Washington, En Banc.
Argued September 23, 1997.
Decided February 26, 1998.
*1125 Robert B. Gould, Law Offices of Robert B. Gould, Brian Waid, Seattle, for Plaintiffs.
Bryan Harnetiaux, Debra Stephens, Spokane, Amicus Curiae on behalf of Washington State Trial Lawyers Association.
Jerret Sale, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Seattle, for Defendant.
William Hickman, Seattle, Amicus Curiae on behalf of State Farm Insurance Company, Et Al.
JOHNSON, Justice.
The United States District Court, pursuant to RCW 2.60, certified the following question to this court:
Does the holding in Safeco Ins. v. Butler, 118 Wash.2d 383, 823 P.2d 499 (1992), apply under a policy of professional liability insurance if the insurer fails to provide a defense to the insured in bad faith? If *1126 Butler applies, what remedies are available to the insured against the insurer?[[1]]
The starting point of our analysis requires us to assume bad faith has been established. The tort of bad faith has been recognized by this court. Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 393-94, 823 P.2d 499 (1992). This cause of action acknowledges that the business of insurance affects the public interest and that an insurer has a duty to act in good faith. RCW 48.01.030.[2] The tort of bad faith recognizes that traditional contract damages do not provide an adequate remedy for a bad faith breach of contract because an insurance contract is typically an agreement to pay money, and recovery of damages is limited to the amount due under the contract plus interest. 15A Ronald A. Anderson, Couch on Insurance § 56:10, at 17 (2d ed. 1983). In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded. Wolf v. League Gen. Ins. Co., 85 Wash.App. 113, 122, 931 P.2d 184 (1997). Bad faith will not be found where a denial of coverage or a failure to provide a defense is based upon a reasonable interpretation of the insurance policy. Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys., 111 Wash.2d 452, 470, 760 P.2d 337 (1988). The failure to defend without this requisite showing does not constitute bad faith, trigger a presumption of harm, or allow coverage by estoppel.

I
The duty to defend arises whenever a lawsuit is filed against the insured alleging facts and circumstances arguably covered by the policy. 7C John A. Appleman, Insurance Law and Practice § 4681, at 16 (Walter F. Berdel rev. ed.1979). The duty to defend is "one of the main benefits of the insurance contract." Butler, 118 Wash.2d at 392, 823 P.2d 499. Although an insurer has a broad duty to defend, alleged claims which are clearly not covered by the policy relieve the insurer of its duty. State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 486, 687 P.2d 1139 (1984). "The key consideration in determining whether the duty to defend has been invoked is whether the allegation, if proven true, would render [the insurer] liable to pay out on the policy. It is not the other way around." Farmers Ins. Co. v. Romas, 88 Wash.App. 801, 808, 947 P.2d 754 (1997). The certified question requires us to assume the claim against the insured alleges facts giving rise to the insurer's duty to defend, and the duty was breached.
The general rule regarding damages for an insurer's breach of contract is that the insured must be put in as good a position as he or she would have been had the contract not been breached. Greer v. Northwestern Nat'l Ins. Co., 109 Wash.2d 191, 202-03, 743 P.2d 1244 (1987). In the failure to defend context, recoverable damages include: (1) the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action, and (2) the amount of the judgment entered against the insured. Greer, 109 Wash.2d at 202, 743 P.2d 1244. In Greer, we stated an insurance company that wrongfully refuses to defend an insured's claim is liable for the amount of the judgment entered provided the act creating liability is a covered event and provided the amount of the judgment is within the limits of the policy. Greer, 109 Wash.2d at 202-03, 743 P.2d 1244. However, Greer does not resolve the question before us because Greer did not address damages and liability when the insurer refuses to defend in bad faith.

II
The existence of bad faith removes us from the general rule. The certified question does not ask us to resolve a simple breach of contract; rather, we are confronted with the intentional abuse of a fiduciary relationship. *1127 The bad faith requires us to set aside traditional rules regarding harm and contract damages because insurance contracts are different. In Butler, under the reservation of rights context, we held there is a rebuttable presumption of harm for an insurer's bad faith breach of contract. Butler, 118 Wash.2d at 389-90, 823 P.2d 499. We are asked whether the rule established in Butler applies to the question before us here.
Although a showing of harm is an essential element of an action for bad faith handling of an insurance claim, we imposed a rebuttable presumption of harm once the insured meets the burden of establishing bad faith. Butler, 118 Wash.2d at 389-90, 823 P.2d 499. In Butler, the court broadly stated, "we presume prejudice in any case in which the insurer acted in bad faith." Butler, 118 Wash.2d at 391, 823 P.2d 499. The certified question requires us to assume the insurer acted in bad faith; therefore, we must assume harm.
The rebuttable presumption of harm recognized in Butler stems from the insurer's duty to act in good faith, which was extensively discussed in Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 715 P.2d 1133 (1986). In Tank, we stated the duty of good faith requires fair dealing and equal consideration for all matters related to the insured's interests. Tank, 105 Wash.2d at 386, 715 P.2d 1133. In Tank, we noted a reservation of rights defense provides a valuable service to an insured, but also recognized the potential for abuse if the defense was undertaken in bad faith. Tank, 105 Wash.2d at 390-91, 715 P.2d 1133. While Tank firmly established an insurer's heightened obligation to act in good faith, Tank did not address a remedy because we found no breach of this duty.
The presumption of harm recognized in Butler is merely an application of the principle discussed in Tank. The rebuttable presumption of harm applies to the question before us because a bad faith breach of the duty to defend wrongfully deprives the insured of a valuable benefit of the insurance contract, and leaves the insured faced with the difficult problem of proving harm. Without the rebuttable presumption of harm, the insurer could defend its position under the following contract theoryeven if there were a duty to defend, our bad faith breach did not cause injury to the insured because ultimate liability was found to be outside the scope of coverage. While the insurer is liable for attorney fees for the breach of the duty to defend under this contract theory, the insured is still confronted with the difficult task of establishing either: (1) that coverage under the policy would have been available, or (2) that liability against the insured would not have been found if the insured had defended the claim in good faith. The rebuttable presumption of harm must be applied because an insured should not be required to prove what might have happened had the insurer not breached its duty to defend in bad faith; that obligation rightfully belongs to the insurer who caused the breach. Butler, 118 Wash.2d at 390, 823 P.2d 499. The disadvantage we sought to prevent in Butler applies equally in this case.[3]

III
Where an insurer acts in bad faith in failing to defend, Butler and other Washington cases recognize that coverage by estoppel is one appropriate remedy. Butler, 118 Wash.2d at 393, 823 P.2d 499. The amicus curiae suggest that Butler, and its remedy of coverage by estoppel, was wrongly decided. Amicus argue if a jury or a court find that liability rests outside the scope of coverage, any bad faith on the part of the insurer did not cause harm, and the insurer cannot be found liable. This argument misses the point. The insured and the insurer contracted for insurance. One of the benefits to this insurance contract is that the insurer will provide a defense when a claim arises alleging facts that may be covered by the contract. In this case the insurer breached the contract by failing to provide a defense in bad faith. The insured did not receive the benefit of the bargain, and we assume the *1128 insured was harmed by the bad faith breach. We feel it is appropriate to estop the insurer from arguing a coverage defense when the insurer breached the contract in bad faith. In such a situation any claim that should have been defended, but was not, will create liability for the insurer to pay at least policy limits.
Once the insurer breaches an important benefit of the insurance contract, harm is assumed, the insurer is estopped from denying coverage, and the insurer is liable for the judgment. The insurer who in bad faith refuses to acknowledge its broad duty to defend is no less liable than the insurer who accepts the duty to defend under a reservation of rights, but then performs the duty in bad faith.
When dealing with an insurance contract, we cannot focus solely on the contractual aspect of the relationship, and we must take into account the purpose of creating a bad faith cause of action. Butler, 118 Wash.2d at 393-94, 823 P.2d 499. The duty to defend is broader than the duty to indemnify, so the duty to defend may be triggered without exposing the insurer to coverage liability. Safeco Ins. Co. of Am. v. McGrath, 42 Wash.App. 58, 61, 708 P.2d 657 (1985). When the insurer breaches the duty to defend in bad faith, the insurer should be held liable not only in contract for the cost of the defense, but also should be estopped from asserting the claim is outside the scope of the contract and, accordingly, that there is no coverage. The coverage by estoppel remedy creates a strong incentive for the insurer to act in good faith, and protects the insured against the insurer's bad faith conduct. Butler, 118 Wash.2d at 394, 823 P.2d 499.
The application of the Butler rule to the present case makes clear the distinction between the legal consequences for a good faith and a bad faith refusal to defend. If we failed to apply the remedy acknowledged in Butler to this question, we would erode any incentive for an insurer to act in good faith. Without coverage by estoppel and the corresponding potential liability, an insurer would never choose to defend with a reservation of rights when a complete failure to defend, even in bad faith, has no greater economic consequence than if such refusal were in good faith. The requirement of acting in good faith cannot be rendered meaningless.

CONCLUSION
In this case, as in Butler, the insurer's bad faith action creates the need to presume harm and apply the coverage by estoppel remedy. The fact that Butler involved a reservation of rights defense does not prohibit the rules developed in Butler from controlling the answer to this certified question.
SMITH, GUY, MADSEN, TALMADGE and SANDERS, JJ., concur.
DURHAM, Chief Justice (dissenting).
In Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 823 P.2d 499 (1992), we held that (1) harm is rebuttably presumed once the insured meets its burden of establishing that an insurer acted in bad faith in handling a claim under a reservation of rights; and (2) an insurer is estopped from denying coverage when it acts in bad faith in handling a claim under a reservation of rights. The majority holds that this rebuttable presumption and coverage by estoppel apply when an insurer in bad faith fails to defend its insured. However, Butler should be limited to the defense under a reservation of rights context. I, therefore, dissent.

I
In Butler, some teenagers vandalized Butler's mailbox. Butler shot at their truck, injuring one of them who then sued. Butler tendered the defense to his personal liability insurer, Safeco, which disputed coverage because Butler intentionally fired at the victim. Yet, Safeco agreed to defend, reserving the right to contest coverage. Butler settled with the plaintiff, stipulated to damages, and assigned his bad faith claim to the plaintiff. The trial court granted Safeco's summary judgment motion regarding coverage, but denied it regarding Safeco's bad faith claim.
The court recognized the potential for conflicts of interest to arise when insurers defend under a reservation of rights. In order to discourage insurers from conducting the *1129 defense to their own advantage on coverage issues, the court shifted the burden of proof regarding the element of harm and estopped insurers from denying coverage when they defend in bad faith under a reservation of rights.
First, the court held that harm is rebuttably presumed once the insured meets its burden of establishing bad faith.[1] The court looked to jurisdictions that presume prejudice where the insurer assumes the defense and then attempts to withdraw.[2] The court reasoned that, although those cases involved insurers' attempts to withdraw from representation, "their reasoning applies equally to situations where the insurer undertakes a defense under a reservation of rights and then acts in bad faith."[3] In particular, the court was persuaded that:
The shifting of the burden ameliorates the difficulty insureds have in showing that a particular act resulted in prejudice. It also recognizes the fact that loss of control of the case is in itself prejudicial to the insured.[[4]]
Second, the court held that where an insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from denying coverage.[5] The court rejected Safeco's argument that recovery should be limited to contract damages. The court reasoned that bad faith breach of the duty to defend violates the fiduciary aspects of the relationship between the insurer and the insured and, therefore, sounds in tort.[6] Moreover, the court was concerned that without the coverage by estoppel remedy, the insurer could act in bad faith without risking any additional loss beyond contract damages.[7] Thus, the coverage by estoppel remedy was adopted to provide a disincentive to bad faith insurer conduct when defending under a reservation of rights.

II
Presumption of harm
The majority suggests that whether an insurer defends in bad faith or in bad faith refuses to defend at all, the insured faces similar problems of proving harm.[8] The majority reasons that in the bad faith failure to defend context, the insured faces the difficult task of establishing that either coverage would have been available or liability against the insured would have been avoided had the insurer undertaken the defense.[9] Yet, it is precisely because of the speculative nature of these assumptions that it is inappropriate to extend the presumption of harm rule to the bad faith failure to defend context.
When an insurer defends under a reservation of rights, the insured loses control over the defense. As the Butler court observed, the loss of control itself is prejudicial.[10] The presumption of harm when an insured entrusts the defense to the insurer is in response to the difficulty of showing that the insured is demonstrably worse off as a result of the insurer having controlled the defense to its own advantage. Despite the lack of demonstrable harm, it is reasonable to assume that an insurer has caused harm when it has actively tried to disadvantage its insured.
This is wholly different from the outright failure to defend. In this context, the insured retains complete control over the defense and may conduct it free from the risk of active self-dealing, which can arise when the defense is entrusted to the insurer under a reservation of rights. It is much more speculative to assume that the insured has *1130 actually suffered harm when the insured has retained full control of the defense. Thus, it is inappropriate to presume harm in cases alleging bad faith failure to defend.
The majority's decision to the contrary reveals a misunderstanding of the role of case authority in our jurisprudence. The majority places great weight on the Butler court's sweeping dicta that we presume harm in any case of insurer bad faith.[11] Yet, it is a fundamental principle of jurisprudence that "general statements ... are to be confined to the facts and issues of that particular case."[12] A statement's true sweep is determined by its case-by-case application. Perhaps someday we will have presumed harm in enough bad faith insurance cases to give authority to the proposition that we presume harm in any case of insurer bad faith. However, until today we have held that there is a presumption of harm only oncewhen an insurer defended in bad faith under a reservation of rights. Since Butler was the first and only time we have presumed harm for insurer bad faith, Butler itself refutes the suggestion that we always presume harm.
Moreover, the Butler court cited no authority for its statement that we presume harm in any case of bad faith. Indeed, the Butler court avoided the rule that prejudice is not presumed except in extreme cases by asserting, without support, that bad faith is an "extreme case."[13] The only support for the presumption of harm rule was drawn from other jurisdictions that presume harm when an insured assumes the defense and later attempts to withdraw.[14] The Butler court summarily concluded that attempting to withdraw after having assumed the defense was the same as defending under a reservation of rights.[15]
The only meaningful analysis in Butler on this issue was the public policy justification that burden shifting (1) ameliorates the insured's difficulty of proving harm; (2) recognizes that the insured's loss of control over the defense was prejudicial; and (3) has a disincentive effect.[16] While two of the three factors are present in the failure to defend context, the second factor identifies a harm that is unique to the reservation of rights context. When an insurer refuses to defend, the insured retains complete control over the defense. This, in my opinion, sufficiently weighs against extending the rule to the present case.
Coverage by estoppel
The majority reasons that in order to preserve the disincentive effect of Butler, the same coverage by estoppel remedy must apply in the context of an insurer's bad faith failure to defend.[17] If there is no coverage by estoppel remedy for bad faith failure to defend, the majority predicts that insurers may refuse to defend rather than risk coverage by estoppel by undertaking the defense under a reservation of rights.[18]
I agree that additional remedies must be available to distinguish bad faith failure to defend from wrongful, yet good faith, failure to defend. I am not, however, persuaded that coverage by estoppel is necessary to achieve this end. As the Butler court observed, bad faith breach of the duty to defend sounds in tort.[19] Generally, tort damages are the amount that will adequately compensate for the loss suffered as the direct and proximate result of the wrongful act.[20] Thus, to the extent that an insurer's bad faith failure to defend is the direct and proximate cause of loss beyond the policy terms, an insured would be entitled to be compensated for such loss. Moreover, the Consumer Protection Act provides significant *1131 disincentive to insurer bad faith conduct,[21] including treble damages of up to $10,000 and attorney fees.[22] These extra-contractual remedies are sufficient disincentive to bad faith insurer conduct. Thus, I would hold that insurers who in bad faith fail to defend an insured are not estopped from raising coverage defenses.
DOLLIVER and ALEXANDER, JJ., concur.
NOTES
[1] Order and Certification to the Washington Supreme Court, U.S. District Court (Western), No. C96 1971Z, at 1 (June 26, 1997).
[2] RCW 48.01.030: "The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance."
[3] The insurer can easily avoid all of these issues by defending with a reservation of rights. When that course of action is taken, the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay.
[1] Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 390, 823 P.2d 499 (1992).
[2] Butler, 118 Wash.2d at 391, 823 P.2d 499 (citing cases).
[3] Butler, 118 Wash.2d at 392, 823 P.2d 499.
[4] Butler, 118 Wash.2d at 392, 823 P.2d 499 (citations omitted).
[5] Butler, 118 Wash.2d at 392, 823 P.2d 499.
[6] Butler, 118 Wash.2d at 393-94, 823 P.2d 499.
[7] Butler, 118 Wash.2d at 394, 823 P.2d 499.
[8] Majority at 1127.
[9] Id.
[10] Butler, 118 Wash.2d at 392, 823 P.2d 499 (citations omitted).
[11] Majority at 1126-1127.
[12] In re Estate of Burns, 131 Wash.2d 104, 113, 928 P.2d 1094 (1997).
[13] Butler 118 Wash.2d at 391, 823 P.2d 499.
[14] Id.
[15] Butler, 118 Wash.2d at 392, 823 P.2d 499.
[16] Id.
[17] Majority at 1128.
[18] Id.
[19] Butler, 118 Wash.2d at 393-94, 823 P.2d 499.
[20] Puget Sound Power & Light Co. v. Strong, 117 Wash.2d 400, 403, 816 P.2d 716 (1991).
[21] Under the Consumer Protection Act, insureds may bring a private action against their insurers for breach of the duty of good faith. Leingang v. Pierce County Med. Bureau, Inc., 131 Wash.2d 133, 149, 930 P.2d 288 (1997) (citing Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 394, 715 P.2d 1133 (1986); RCW 19.86.090).
[22] RCW 19.86.090.